5 F.3d 543
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jaspal SINGH, Defendant-Appellant.
 No. 92-10638.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 31, 1993.
Decided Sept. 8, 1993.
 
 Appeal from the United States District Court for the Northern District of California, D.C. No. CR-90-20129-JW; James Ware, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before: REAVLEY,* PREGERSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant Jaspal Singh was indicted in eight counts of bribery of a public official, in violation of 18 U.S.C. Sec. 201(b)(1)(c). Singh was arrested as part of a bribery investigation conducted by the Federal Bureau of Investigation ("FBI") at the Salinas Immigration and Naturalization Service ("INS") office. Ishmael Ikharo was also indicted for bribery of a public official as part of the same investigation. Before trial, Ikharo filed a motion to dismiss for outrageous governmental conduct. Singh joined. The motion was denied.
 
 
 3
 After the district court denied the motion to dismiss, a jury convicted Singh of six counts of bribery.[1] On appeal, Singh asserts that the court erred in denying the motion to dismiss because the FBI investigation of bribe payments to an INS official was so outrageous that it violated the Due Process Clause of the Fifth Amendment. Singh also asserts that the district court erred in denying funds for witness expenses. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 4
 In June 1990, two men approached Gregory Ward, the Chief Legalization Officer in the INS office in Salinas, California, and offered him bribes in exchange for work authorization permits for East Indian immigrants. Ward reported the attempted bribe to his supervisors, who notified the FBI. The FBI decided to set up an undercover investigation and enlisted Ward to pose as a corrupt government official to determine the scope and organization, if any, of the criminal activity.
 
 
 5
 Ward began accepting bribes from the two men who had originally approached him.[2] However, as word spread throughout the East Indian immigrant community that a high-ranking INS official was accepting bribes in exchange for work permits, hundreds of East Indians came to the Salinas INS office to obtain work permits. By September 1990, one-to-two hundred people gathered daily outside the Salinas office. By October, the crowd had swelled to five-to-six hundred people each day. When the investigation ended in mid-October, the government had taken in over $1.5 million in bribes and issued approximately 1300 illegal work permits.
 
 
 6
 On September 7, 1990, Singh, an East Indian immigrant, telephoned Ward to complain about the bribe situation. Singh and Ward agreed to meet. At this meeting, Singh and Ward discussed the bribe situation. Singh then made the first of several payments to Ward in exchange for work authorization permits.[3] Thereafter, Singh was arrested, charged, and convicted of bribery of a public official, in violation of 18 U.S.C. Sec. 201(b)(1)(c).
 
 ANALYSIS
 I. Outrageous Governmental Conduct
 
 7
 Singh asserts that the district court erred in denying his motion to dismiss for outrageous governmental conduct because the FBI's use of a government official to solicit bribes in exchange for work permits was a violation of "fundamental fairness, shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973) (quoting Kinsella v. United States, 361 U.S. 234, 246 (1960)). We review de novo whether the governmental conduct at issue violates Singh's due process rights. United States v. Garza-Juarez, 992 F.2d 896, 903 (9th Cir.1993).
 
 
 8
 Circuit courts have reversed convictions due to outrageous governmental conduct in only two cases: Greene v. United States, 454 F.2d 783 (9th Cir.1971), and United States v. Twigg, 588 F.2d 373 (3d Cir.1978).
 
 
 9
 In Greene, an undercover agent, who had previously helped convict the defendants of bootlegging (without blowing his cover), reestablished contact with the defendants after their release from jail. For over two years, the agent was involved in establishing the defendants' bootlegging operation. He offered to supply materials, an operator, and a location for a still. The agent actually supplied sugar at wholesale for the operation and was the sole purchaser of the defendants' liquor. Greene, 454 F.2d at 786. In reversing the defendants' convictions, we concluded that "when the Government permits itself to become enmeshed in criminal activity, from beginning to end ... the Government's conduct rises to a level of 'creative activity' " that violates the defendants' due process rights. Id. at 787 (quoting Sherman v. United States, 356 U.S. 369, 372 (1958) (emphasis in original)).
 
 
 10
 In Twigg, an undercover agent provided the defendant with hard-to-obtain, chemical ingredients essential to manufacture "speed." The agent also supplied the glassware and expertise necessary to operate a laboratory, as well as a site for the laboratory. The court reversed the defendant's conviction, concluding that the government had "generated new crimes by the defendant merely for the sake of pressing criminal charges against him." Twigg, 588 F.2d at 381.
 
 
 11
 "Only extreme misconduct constitutes a due process violation." United States v. Ramirez, 710 F.2d 535, 541 (9th Cir.1973). We have held that law enforcement officials may use undercover agents to infiltrate an ongoing criminal enterprise. United States v. Lomas, 706 F.2d 886, 890 (9th Cir.1983), cert. denied. 464 U.S. 1047 (1984). Furthermore, undercover agents may "supply the contraband which is at the heart of the offense." Shaw v. Winters, 796 F.2d 1124, 1125 (9th Cir.1986) (undercover agent permitted to sell stolen food stamps to the defendant), cert. denied, 481 U.S. 1015 (1987).
 
 
 12
 We agree that the FBI's bribery investigation was handled poorly. However, the governmental conduct in this case does not reach the level of outrageousness evidenced in Greene and Twigg. The government was not enmeshed in criminal activity from beginning to end. Greene, 454 F.2d at 787. Nor was the government generating new crimes merely for the sake of pressing charges against Singh. Twigg, 588 F.2d at 381. It was Singh who initiated contact with Ward. Thus, we conclude that the FBI's activities in this case did not constitute outrageous governmental conduct.
 
 II. Denial of Funds for Witness Expenses
 
 13
 To reverse a district court's denial of funds for witness expenses under 18 U.S.C. Sec. 3006A(e), the Criminal Justice Act, the defendant must establish prejudice by clear and convincing evidence. Mason v. Arizona, 504 F.2d 1345, 1352 (9th Cir.1974), cert. denied, 420 U.S. 936 (1975). In determining whether such a showing has been made, the court must properly consider whether defense counsel, at the time of requesting the funds, made as complete a showing of necessity as could be reasonably expected. Id.
 
 
 14
 Singh asserts that the district court erred in denying his ex parte motion for expenses necessary to have several witnesses flown from New York to California. At the time of requesting funds for witness expenses, Singh's counsel failed to show how these witnesses would be necessary to Singh's defense. The witnesses, if called, could only offer testimony as to the general atmosphere surrounding the INS office during the FBI investigation. They could not provide any information about specific dealings between Singh and Ward.
 
 
 15
 Because Singh has failed to show that these witnesses were necessary, or that he was prejudiced because they did not testify, we conclude that the district court properly denied his motion for witness expenses.
 
 
 16
 Accordingly, the judgment and sentence of the district court are AFFIRMED.
 
 
 
 *
 Hon. Thomas M. Reavley, United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The record does not indicate what happened to Ikharo
 
 
 [2]
 The record is silent as to what ultimately happened to these two individuals
 
 
 [3]
 The district court made no findings of fact as to who suggested the bribes. However, in determining that no outrageous governmental conduct occurred, the district court assumed arguendo that Ward initiated the bribes